# EXHIBIT A

Prepared by: STEPHANIE EDWARDS

**Capital One F.S.B.**

DATE:       08/23/2005
BORROWER: TIMOTHY ZABIELSKI
CASE #:
LOAN #:
PROPERTY ADDRESS: 106 MCLEAN ST
                  DUPONT, PA 18641-1323

Branch #:
2375 N GLENVILLE DR RGV-B844-3
RICHARDSON, TX 75082
Phone: (888) 973-8363
Br Fax No.: (972) 781-5708

## HOME EQUITY CREDIT LINE AGREEMENT AND
## DISCLOSURE STATEMENT

Date: 08/23/2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
Capital One F.S.B.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
Capital One F.S.B.

If the Mortgage (as hereinafter defined) is subject to a prior mortgage on the Real Property (as hereinafter defined), this Agreement covers open-end loans pursuant to the Pennsylvania Secondary Mortgage Loan Act.

If the premium for property insurance is paid by means of a loan under my Account the amount of that premium is $ 500.04

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

● HELOC - PA Agreement & Disclosure
2C502-PA (09/04)(c)

Page 1 of 8

Initials: _TZ_

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my Account.

F. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." If the Draw Period on my Account is 36 months, my "Minimum Payment Due" during the Repayment Period equals 1/120th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 30,000.00      . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**5. ANNUAL PERCENTAGE RATE.**

[X] A. The initial Daily Periodic Rate is  0.01093 %. The initial **ANNUAL PERCENTAGE RATE** is 3.990 %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5.C below had been used, in which event the initial Daily Periodic Rate would be  0.02671 % and the initial **ANNUAL PERCENTAGE RATE** would be   9.750 %. These discounted rates will be in effect from the date of this Agreement until 09/30/2005        . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

[ ] B. The initial Daily Periodic Rate is    N/A % and the initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in Paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 5.C above to determine my **ANNUAL PERCENTAGE RATE** is 3.500    percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above   18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**6. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

LOAN #: ▮▮▮▮▮

B. Other **FINANCE CHARGES.**

(1) Application Fee **FINANCE CHARGE.**

I agree to pay an Application Fee **FINANCE CHARGE** of    0.000 % ($ 0.00    ) of my Credit Limit at the time I sign this Agreement.

|  | $ | 0.00 |
|---|---|---|
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A    at the time I sign this Agreement.

|  | $ |  |
|---|---|---|
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

| Attorney's Fee | $ |  |
|---|---|---|
| Closing/Escrow | $ | 395.00 |
| State Fee | $ | 75.00 |
|  | $ |  |
|  | $ |  |
|  | $ |  |

(4) Annual Maintenance Fee **FINANCE CHARGE.**

☐ I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 0.00    which you will charge to my Account on this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $
from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

☒ I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

**7. OTHER CHARGES.**
    A. I agree to pay the charge listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

    (1) If I fail to make my "Minimum Payment Due" within fifteen (15) days of the "Payment Due Date," I agree to pay a late fee of $20 or 10% of the payment, whichever is greater.

    (2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.
    B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| Credit Report Fee | $ | 35.00 |
|---|---|---|
| Abstract/Title | $ | 175.00 |
| Recording | $ | 83.50 |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |

| LESS Amounts Paid by Lender | $ | 0.00 |
|---|---|---|
| Total Paid by Borrower | $ | 789.50 |

LOAN #: ▮▮▮▮▮▮

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at
106 MCLEAN ST, DUPONT, PA 18641-1323
(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**9. SECTION INTENTIONALLY OMITTED.**

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1)     the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2)     you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3)     I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4)     government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5)     government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6)     the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

(7)     The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

LOAN #: ▮▮▮▮▮▮

E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

## 12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a) A judgment is filed against me;

    (b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d) I move out of the Real Property.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Mortgage;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

LOAN #: [redacted]

**13. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

    (1) my promise not to exceed my Credit Limit; and

    (2) my "Important Obligations" listed in the Mortgage.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. The periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

    (1) if the original Index is no longer available, you may change the Index and Margin;

    (2) you may make any change I agree to in writing;

    (3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

    (4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

LOAN #: ▮▮▮▮▮▮▮

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 17. OTHER PROVISIONS.

A. _Third Parties_. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. _Additional Credit Reports and Appraisals_. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. _Tax Deductibility_. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. _Applicable Law_. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. _Application of Payments_. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. _Failure to Perform_. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. _Waiver of Jury Trial_. I waive my right to a jury trial.

H. _Complete Understanding of the Parties_. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. _Waiver of Notice_. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z or that may be required under applicable state law and that, under the provisions of such law, may not be waived.

J. _Meaning of Words_. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. _Payment Marked "Payment in Full"_. I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
Customer Service
P.O. BOX 5170, SIMI VALLEY, CA 93062-5170

L. _Enforcement_. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

LOAN #: ▮▮▮▮▮▮▮

**M.** Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at

Customer Service

P.O. BOX 5170, SIMI VALLEY, CA 93062-5170

or to such other address as you may designate by written notice to me as provided in this paragraph 17.M.

**N.** Riders/Addenda. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

| | | | |
|---|---|---|---|
| ☐ | No Cost Addendum | ☐ | _____ Rider |
| ☒ | Fee _____ Addendum | ☐ | _____ |
| ☒ | Billing Rights Statement | | |

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

Borrower: TIMOTHY ZABIELSKI     TZ 8/23/05     Date

Borrower:            Date

Borrower:            Date

Borrower:            Date

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE

CAPITAL ONE, F.S.B

BY _____
MARIBEL LEDEZMA
COLLATERAL PROCESSING OFFICER
TREASURY BANK, N.A.
AS ATTORNEY IN FACT FOR
CAPITAL ONE, F.S.B

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

● HELOC - PA Agreement & Disclosure
2C502-PA (09/04)         Page 8 of 8





 

Prepared by: STEPHANIE EDWARDS

LOAN #: ██████

# FEE ADDENDUM TO HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT

This Addendum amends and supplements and is incorporated into the Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") dated  AUGUST 23, 2005        entered into between me and the Lender identified in the Agreement. Capitalized terms used in this Addendum have the same meanings as given to them in the Agreement. The words "I" and "my" refer to the Borrower or Borrowers signing the Agreement and this Addendum.

Section  6.B  , Other **FINANCE CHARGES**, of the Agreement is amended by replacing subparagraphs (1) (2) and (3) with the following and renumbering, as applicable, the remaining subparagraphs.

B. Other **FINANCE CHARGES**. In addition to any Finance Charges listed in the Agreement, I agree to pay the following FINANCE CHARGES at the time I sign the Agreement:

Flood Certification                                            $        26.00

--------------------------------------------------        -------------

Section  7.B      of the Agreement is amended to read as follows:

B. In addition to any closing costs listed in the Agreement, I agree to pay the following closing costs at or before the time I sign this Agreement.

Except for the modifications described above, all terms and conditions of the Agreement remain unchanged and in full force and effect.

_____ (Seal)          _____ (Seal)
TIMOTHY ZABIELSKI
Borrower                                                         Borrower

_____ (Seal)          _____ (Seal)

Borrower                                                         Borrower

● Addendum to HELOC - Agreement & Disclosure
2E305-US  (08/05)(d)                              Page 1 of 1





Prepared by: STEPHANIE EDWARDS

**Capital One F.S.B.**

DATE:      08/23/2005
BORROWER: TIMOTHY ZABIELSKI
CASE #:
LOAN #:
PROPERTY ADDRESS: 106 MCLEAN ST
              DUPONT, PA 18641-1323

Branch #:
2375 N GLENVILLE DR RGV-BE44-3
RICHARDSON, TX 75082
Phone: (888)973-9393
Br Fax No.: (972) 781-5708

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities
### After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-XX (06/02)(d)

Initials: _TZ_        Initials: _____

# EXHIBIT B



Prepared By:
STEPHANIE EDWARDS
Capital One F.S.B.

2375 N GLENVILLE DR

RICHARDSON
TX 75082
Phone: (888)973-8383
~~After Recording Return To:~~
RETURN TO (NLS),
Nations Title Agency, Inc.
5370 W. 95th St.
Shawnee, KS 66207
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Parcel Number:

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY _Dupont Boro_

TRANSFER _____ DIVISION _____

DATE _9·29-05_                          _EKP_
                                    Mapping Clerk

Premises:
106 MCLEAN ST
DUPONT
PA 18641-1323

────────────── [Space Above This Line For Recording Data] ──────────────

[Doc ID #]

## OPEN-END MORTGAGE
(Line of Credit)

**NOTICE TO BORROWER: This document contains provisions for a variable interest rate.**

MIN

THIS OPEN-END MORTGAGE, dated AUGUST 23, 2005      , is between
TIMOTHY ZABIELSKI, SINGLE

RETURN TO (NLS):
NATIONS TITLE AGENCY INC.
5370 W. 95TH ST.
SHAWNEE, KS 66207

● MERS HELOC - PA Mortgage
1E024-PA (02/05)(d)                    Page 1 of 8                    Initials: _TZ_

REC Book 3005 Page 275703

DOC ID #: ████████████

residing at
106 MCLEAN ST, DUPONT, PA 18641

the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us" and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **MERS is the "Mortgagee" under this Open-End Mortgage ("Mortgage")** and is acting solely as nominee for
Capital One F.S.B.

("Lender" or "you") and its successors and assigns.

MORTGAGED PREMISES: In consideration of the loan hereinafter described and intending to be legally bound, we hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the premises located at:

106 MCLEAN ST, DUPONT

Street/City

LAWRENCE                                    Pennsylvania 18641-1323
County                                          ZIP

(the "Premises"), and further described as:

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

● MERS HELOC - PA Mortgage
1E024-PA (02/05)                     Page 2 of 8                     Initials: _TZ_

REC Book 3005 Page 275704

DOC ID #: ███████████

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

THIS MORTGAGE SECURES FUTURE ADVANCES UP TO A MAXIMUM INDEBTEDNESS OF $30,000.00 EXCLUSIVE OF INTEREST AND EXCLUSIVE OF ADVANCES THAT MAY BE MADE BY YOU UNDER THE PROVISIONS OF THE SECTION OF THIS MORTGAGE ENTITLED "OUR AUTHORITY TO YOU."

LOAN: This Mortgage will secure your loan to us in the principal amount of $30,000.00 or so much thereof as may be advanced and readvanced from time to time to
TIMOTHY ZABIELSKI
, and

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated AUGUST 23, 2005 , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

● MERS HELOC - PA Mortgage
1E024-PA (02/05)         Page 3 of 8         Initials: *TZ*

REC Book 3005 Page 275705

DOC ID #: ███████████

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated 08/01/2004 and given by us to WELLS FARGO HOME MO

as mortgagee, in the original amount of $ 60,860.00 (the "Prior Mortgage").

● MERS HELOC - PA Mortgage
1E024-PA (02/05)                     Page 4 of 8                     Initials: _TZ_

REC Book 3005 Page 275706

We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

● MERS HELOC - PA Mortgage
1E024-PA (02/06)                                    Page 5 of 8                                    Initials: _TZ_
REC Book 3005 Page 275707

DOC ID #: ████████

**WAIVERS:** To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

**BINDING EFFECT:** Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

**NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you, including without limitation any notice under 42 Pa.C.S.A. Section 8143, shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
1680 Capital One Drive
McLean, VA 22102
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

**RELEASE:** Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

● MERS HELOC - PA Mortgage
1E024-PA (02/05)                     Page 6 of 8                     Initials: TZ

REC Book 3005 Page 275708

We acknowledge receipt of a signed copy of this Mortgage.

DOC ID #: ███████████

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

_Timothy Zabielski_ _____ (SEAL)
Mortgagor: TIMOTHY ZABIELSKI

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

REC Book 3005 Page 275709

DOC ID #: [REDACTED]

**COMMONWEALTH OF PENNSYLVANIA,** Luzerne County ss:

On this, the 23rd day of August , 2005 , before me, the undersigned officer, personally appeared Timothy Zabielski, Single

person _____ whose name (S subscribed to the within instrument and acknowledged that he executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

Joanne L. Rezzino
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joanne L. Rezzino, Notary Public
Moosic Boro, Lackawanna County
My Commission Expires June 21, 2008

I certify that the within named Mortgagee,
Capital One F.S.B.

has an office at
1680 Capital One Drive
McLean, VA 22102

Signature _____
Agent on behalf of Mortgagee

● MERS HELOC - PA Mortgage
1E024-PA (02/05)                    Page 8 of 8              Initials: TZ

REC Book 3005 Page 275710

## LEGAL DESCRIPTION
## (Exhibit A)

█████████████

ALL THE SURFACE AND RIGHT OF SOIL ONLY OF AND TO THE FOLLOWING LOT,
PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE VILLAGE OF
SMITHVILLE, BOROUGH OF DUPONT (FORMERLY LOCATED IN THE MUNICIPALITY
OF PITTSTON TOWNSHIP), LUZERNE COUNTY, PENNSYLVANIA. BEING LOT NO. 5
ON McLEAN STREET, ALSO REFERRED TO IN PRIOR DEEDS AS McCLELLAN STREET,
AS LAID OUT ON MAP OF GEORGE AND HENRY SMITH'S PLOT OF LOTS IN
SMITHVILLE, CONTAINING ABOUT 7500 SQUARE FEET OF LAND, BE THE SAME
MORE OR LESS, BEING FIFTY (50) FEET FRONT AND ONE HUNDRED FIFTY (150) FEET
DEEP.

SUBJECT TO THE SAME CONDITIONS, EXCEPTIONS, RESTRICTIONS AND
RESERVATIONS AS ARE CONTAINED IN PRIOR DEEDS FORMING THE CHAIN OF
TITLE.

Tax Id: █████████████

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
5664785
RECORDED ON
Oct 19, 2005
1:13:37 PM
BOOK:REC/3005
PAGE:275703
Total Pages: 9

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| LUZERNE COUNTY RECORDING FEE | $23.00 |
| LUZERNE COUNTY ARCHIVES FEE | $2.00 |
| LUZERNE RECORDER'S ARCHIVES FEE | $3.00 |
| LUZERNE COUNTY HOUSING TRUST FUND | $13.00 |
| TOTAL | $51.50 |

INV: 425011



I hereby CERTIFY that this
document is recorded in the
Recorder of Deeds Office of
Luzerne County, Pennsylvania.

*Mary K. Dysleski*

MARY K. DYSLESKI
RECORDER OF DEEDS

REC Book 3005 Page 275711

# EXHIBIT C

### JOAN HOGGARTH
### LUZERNE COUNTY CLERK OF RECORDS
### DIVISION OF JUDICIAL SERVICES AND RECORDS



**Recorder of Deeds Division**
**Luzerne County Courthouse**
**200 N. River Street**
**Wilkes-Barre, PA 18711**
**(570) 825-1641**

\*<u>RETURN DOCUMENT TO:</u>
SECURITY CONNECTIONS

**Instrument Number - 201823242**
Recorded On 5/4/2018 At 1:03:23 PM
\* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 951710    User ID: MJH    **\*Total Pages - 4**
\* Mortgagor - MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.  CAPITAL ONE
\* Mortgagee - BANK OF NEW YORK MELLON
\* Customer - SECURITY CONNECTIONS

\* <u>FEES</u>

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| COUNTY RECORDING FEE | $18.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| RECORDER'S ARCHIVES FEE | $3.00 |
| PIN CERTIFICATIONS | $20.00 |
| TOTAL PAID | $83.75 |

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Luzerne County, Pennsylvania



Joan Hoggarth
Joan Hoggarth
Clerk of Records
Recorder of Deeds Division

<u>PARCEL IDENTIFICATION NUMBER</u>

Total Property Identification Numbers: 1



## THIS IS A CERTIFICATION PAGE

# Do Not Detach

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

INSTRUMENT NUMBER - **201823242**      BOOK: **3018** PAGE: **79759**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                   -     DUPONT BOROUGH
        CERTIFIED 05/04/2018 BY AWA
```

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:
**JULIO ESTRADA**
**BANK OF AMERICA**

4909 SAVARESE CIR.
TAMPA, FL 33634
(800) 444-4302
Tax/Parcel #: █████████

When Recorded Mail To:
**FIRST AMERICAN TITLE COMPANY**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is 1901 E. Voorhees St., Suite C, Danville, IL 61834; and P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR INDENTURE TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS INDENTURE TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-F** (herein "Assignee"), whose address is 226 W MONROW ST 26FL, CHICAGO, IL 60670, and its successors and assigns all its right, title and interest in and to a certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS**
Mortgagor(s): **TIMOTHY ZABIELSKI, SINGLE**
Date of Mortgage: **AUGUST 23, 2005**
Original Loan Amount: **$30,000.00**
Property Address: **106 MCLEAN ST, DUPONT, PENNSYLVANIA 18641**

Recorded on **OCTOBER 19, 2005** in INSTRUMENT NO. **5664785** BOOK REC/3005 PAGE 275703 of the official Records of LUZERNE COUNTY, State of PENNSYLVANIA.

LEGAL DESCRIPTION:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Assignment of Mortgage █████████
Wintrack #: █████████

Page 1

MIN #: █████████
MERS Phone#: (888) 679-6377

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**APR 2 5 2018**
_____
Date

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS

By: _____  **JESSICA FIGUEROA**
(Signature)                     **ASSISTANT VICE PRESIDENT**

I hereby certify that the correct address of the assignee is: **226 W MONROW ST 26FL, CHICAGO, IL 60670**

_____       **Jessica Figueroa**
(signature)                     Attest (Print Name)

_____ [Space Below This Line for Acknowledgments] _____
STATE/COMMONWEALTH OF _____Florida_____
COUNTY OF __HILLSBOROUGH__

On this, the __25th__ day of __APRIL__ , 20_18_ , before me __Martha Lucia Correa__ , the undersigned officer, personally appeared **JESSICA FIGUEROA** , who acknowledged himself/herself to be the **ASSISTANT VICE PRESIDENT** of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS, a company, and that he/she as such **ASSISTANT VICE PRESIDENT** being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as **ASSISTANT VICE PRESIDENT**

In witness whereof, I hereunto set my hand and official seal.

**Personally Known** ✓ **OR Produced Identification** N/A

**Type of identification produced:** N/A

_____
Notary Public

Printed Name: __Martha Lucia Correa__
My commission expires: __1/26/2019__

MARTHA LUCIA CORREA
Notary Public, State of Florida
Commission# FF 192644
My comm. expires Jan. 26, 2019

Assignment of Mortgage
Wintrack #:                              Page 2

MIN #:
MERS Phone#: (888) 679-6377

## EXHIBIT A

BORROWER(S): TIMOTHY ZABIELSKI, SINGLE

LOAN NUMBER: ▮▮▮▮▮▮▮▮

LEGAL DESCRIPTION:

ALL THE SURFACE AND RIGHT OF SOIL ONLY OF AND TO THE FOLLOWING LOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE VILLAGE OF SMITHVILLE, BOROUGH OF DUPONT (FORMERLY LOCATED IN THE MUNICIPALITY OF PITTSTON TOWNSHIP), LUZERNE COUNTY, PENNSYLVANIA. BEING LOT NO. 5 ON MCLEAN STREET, ALSO REFERRED TO IN PRIOR DEEDS AS MCCLELLAN STREET, AS LAID OUT ON MAP OF GEORGE AND HENRY SMITH'S PLOT OF LOTS IN SMITHVILLE, CONTAINING ABOUT 7500 SQUARE FEET OF LAND, BE THE SAME MORE OR LESS, BEING FIFTY (50) FEET FRONT AND ONE HUNDRED FIFTY (150) FEET DEEP.

SUBJECT TO THE SAME CONDITIONS, EXCEPTION, RESTRICTIONS AND RESERVATIONS AS ARE CONTAINED IN PRIOR DEEDS FORMING THE CHAIN OF TITLE.

ALSO KNOWN AS: 106 MCLEAN ST, DUPONT, PENNSYLVANIA 18641

Assignment of Mortgage ▮▮▮▮▮▮▮
Wintrack # ▮▮▮▮▮▮▮▮▮▮▮▮

Page 3

MIN #: ▮▮▮▮▮▮▮▮
MERS Phone#: (888) 679-6377

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:
**JULIO ESTRADA**
**BANK OF AMERICA**

4909 SAVARESE CIR.
**TAMPA, FL 33634**
**(800) 444-4302**
Tax/Parcel #:

When Recorded Mail To:
**FIRST AMERICAN TITLE COMPANY**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is **1901 E. Voorhees St., Suite C, Danville, IL 61834; and P.O. Box 2026, Flint, MI 48501-2026**, does hereby grant, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR INDENTURE TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS INDENTURE TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-F** (herein "Assignee"), whose address is **226 W MONROW ST 26FL, CHICAGO, IL 60670**, and its successors and assigns all its right, title and interest in and to a certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS**
Mortgagor(s): **TIMOTHY ZABIELSKI, SINGLE**
Date of Mortgage: **AUGUST 23, 2005**
Original Loan Amount: **$30,000.00**
Property Address: **106 MCLEAN ST, DUPONT, PENNSYLVANIA 18641**

Recorded on **OCTOBER 19, 2005** in **INSTRUMENT NO. 5664785  BOOK REC/3005  PAGE 275703** of the official Records of **LUZERNE COUNTY**, State of **PENNSYLVANIA**.

LEGAL DESCRIPTION:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Assignment of Mortgage
Wintrack #:

Page 1

MIN #:
MERS Phone#: (888) 679-6377

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**APR 2 5 2018**

Date

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS

By: _____         **JESSICA FIGUEROA**
(Signature)                          **ASSISTANT VICE PRESIDENT**

I hereby certify that the correct address of the assignee is: **226 W MONROW ST 26FL, CHICAGO, IL 60670**

_____              **Jessica Figueroa**
(signature)                           Attest (Print Name)

_____ [Space Below This Line for Acknowledgments] _____
STATE/~~COMMONWEALTH~~ OF _____**Florida**_____
COUNTY OF ___**HILLSBOROUGH**___

On this, the **25th** day of **APRIL** , 20**18** , before me **Martha Lucia Correa** , the undersigned officer, personally appeared **JESSICA FIGUEROA** , who acknowledged himself/herself to be the **ASSISTANT VICE PRESIDENT** of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS, a company, and that he/she as such **ASSISTANT VICE PRESIDENT** being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as ASSISTANT VICE PRESIDENT

In witness whereof, I hereunto set my hand and official seal.

Personally Known ____ OR Produced Identification _N/A_
Type of Identification produced: _N/A_

_____
Notary Public

Printed Name: ____**Martha Lucia Correa**____
My commission expires: ___**1/26/2019**___

> **MARTHA LUCIA CORREA**
> Notary Public, State of Florida
> Commission# FF 192644
> My comm. expires Jan. 26, 2019

Assignment of Mortgage                Page 2
Wintrack #: ██████████

MIN #: ██████████
MERS Phone#: (888) 679-6377

**EXHIBIT A**

BORROWER(S): TIMOTHY ZABIELSKI, SINGLE

LOAN NUMBER: ███████████

LEGAL DESCRIPTION:

ALL THE SURFACE AND RIGHT OF SOIL ONLY OF AND TO THE FOLLOWING LOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE VILLAGE OF SMITHVILLE, BOROUGH OF DUPONT (FORMERLY LOCATED IN THE MUNICIPALITY OF PITTSTON TOWNSHIP), LUZERNE COUNTY, PENNSYLVANIA. BEING LOT NO. 5 ON MCLEAN STREET, ALSO REFERRED TO IN PRIOR DEEDS AS MCCLELLAN STREET, AS LAID OUT ON MAP OF GEORGE AND HENRY SMITH'S PLOT OF LOTS IN SMITHVILLE, CONTAINING ABOUT 7500 SQUARE FEET OF LAND, BE THE SAME MORE OR LESS, BEING FIFTY (50) FEET FRONT AND ONE HUNDRED FIFTY (150) FEET DEEP.

SUBJECT TO THE SAME CONDITIONS, EXCEPTION, RESTRICTIONS AND RESERVATIONS AS ARE CONTAINED IN PRIOR DEEDS FORMING THE CHAIN OF TITLE.

ALSO KNOWN AS: 106 MCLEAN ST, DUPONT, PENNSYLVANIA 18641

Assignment of Mortgage ███████████          Page 3

Wintrack #: ███████████

MIN #: ███████████
MERS Phone#: (888) 679-6377